Case No. 18-1270, Americans Coal Company, Petitioner, District 7 Mine Safety and Health Review Commission, et al. Mr. Harden, the petitioner, Mr. Blair, the accused, the respondent. Mr. Harden, the petitioner, Mr. Blair, the accused, Mr. Blair, the respondent. Good morning. Good morning. May it please the Court. My name is Jason Harden. I'm here on behalf of the appellant, the American Coal Company. I've reserved two minutes for rebuttal. We're here today because of a significant problem in the bifurcated enforcement scheme created by the Mine Act. Specifically, the issue is there's no clear guidance about how the proposed assessments, in this case special assessments, about what role those proposed special assessments play in an evidentiary hearing that ensues after a mine operator has contested one of the proposed penalties. As it currently stands, the lack of guidance has basically created there's imprecision over who bears the burden of proof, which party initially bears the burden of proof with proving the proposed assessment at an evidentiary hearing, and then what is that burden of proof. And the result has been, first, that administrative law judges have, in the last decade, oftentimes seem to have pulled their assessments out of thin air that aren't based upon any actual evidence or facts put forth in the record. And so what that does is the result is that mine operators, like American Coal, are left with shouldering that burden. So rather than the secretary bearing the burden initially, the mine operators bear the burden. They have to come in and disprove the proposed assessment. Or they can take a risk and not put in any evidence and just see what the judge does on his or her own. That's American Coal's position is this guidance in the current practice by the commission is contrary to the Mine Act and the Administrative Procedure Act. And that clearly the secretary, as the proponent... What did the ALJ in this case do? I know you're talking about this broader problem here. Sure. But in this case, what did the ALJ do and what did the commission affirm? Correct. So in this case, this case involves five violations that were all specially assessed by the Secretary of Labor. So there were proposed special assessments of $69,600. Under their usual regular assessment system, it would have been about $19,961. So it was about the proposed special assessment... These regular assessments, special assessments, these are, correct me if I'm wrong, these are directions from the secretary to the inspectors, right? Not to the inspectors. So what happens is, let me just talk about the process in general. So the secretary's inspectors... My point is they're not directions to the administrative law judge. That's correct. Right. Because the administrative law judge is part of an independent commission. That's correct. The Mine Act creates a bifurcated enforcement scheme. You have the secretary that enforces the standards and issues violations. And then, importantly... So isn't the obligation of the administrative law judge and the commission to look at the statute? Right. That is correct. What role, if any, do the secretary's directions to the inspectors have to do with that determination made by the administrative law judge and the commission? That's the question. Right. Well, actually, the assessments aren't directions to the inspectors. So the inspectors issue violations. Once they've issued them, they run up the chain in MSHA. And MSHA then, 60 days later or 90 days later, they issue a proposed penalty. Right. And that is mailed to the mine operator. And the mine operator can do one of two things. They can pay it or they can contest it. And if they contest it, it begins an administrative hearing. The jurisdiction then attaches to the commission, a separate agency. And the commission then allows for discovery, holds an evidentiary hearing. And then, ultimately, the ALJ will issue his or her own assessments. Based on what? Exactly. So the question is, you have two separate agencies. You would hope, in a perfect world, that if MSHA, in proposing an assessment, they know all the facts. They know all the facts. They issue a proposed assessment. Mine operator contests it. The exact same facts come out before the judge. You would hope that the judge would issue the same assessment, would come out with the same assessment. Because you would hope for consistency between the two agencies because they're interpreting the same statute. Yes and no. I mean, the obvious parallel, at least at a gross level, is sentencing, criminal sentencing. Prosecutors, before the sentencing guidelines, would ask for something. And the judge would be looking at the same statute and the same general sentencing criteria and come up with something different. And they each have their own, you know, the prosecuting agent has its own interest and evaluation. And the independent adjudicator has maybe a more balanced or different view. And in either case, it's based on factors. And there's evidence showing those factors. And then there's evaluation by the adjudicator assessing those factors. And I see all of that in this record. Right. We're not asking for mathematical precision between what MSHA proposes and the commission ultimately does if the facts were the same. That's not what we're asking. In this case, what happens, though, is well, in this case, what happened and what we've seen happen in other cases is the secretary makes this proposal. And it comes into evidence. Actually, MSHA often would never actually put it into evidence. The secretary wouldn't put it into evidence during the hearing. But it's there because it's part of their petition for the assessment of a penalty. And the judges take those initial penalties, and that's their starting point. That's where they begin from. And so then the judges usually either move up or down what the proposal is. And that's actually or maybe the mine operator comes in and says, no, actually, no liability. We were safe, and these things didn't happen. And I'm sure there are cases in which the ALJ starts from there and says, well, on these facts, I actually think that's pretty much where I am. Convince me otherwise. So you're going to have cases of either kind, I think, because that's the way the adversary system works. I agree with that, Your Honor. But the question is who initially bears the burden of proof of the proposed penalty. Everybody agrees on that. This wasn't a case where the mine operator was challenging the fact of the violations. They were challenging the assessments. They felt the assessments were inflated. And more importantly, the secretary couldn't prove an enhanced penalty before the judge. And so the question is, if MSHA says, hey, this is a special violation that merits a special assessment, they should have to prove what that means before the judge. But that's only their internal way of understanding things. When it goes to the ALJ, the ALJ is not bound by that. Let me give you a hypothetical that I think will answer the question. And it will highlight exactly why this case exists. Under the regular assessment mechanism, so had MSHA decided that, hey, these violations, we're going to regularly assess them like we have for years past, it would have been about $20,000. If the mine operator had contested it and gone to a hearing and got the same result on the violations that they got with ALJ Lewis below, so there would have been, of the five violations, three had moderate negligence reduced to low negligence. One had high negligence reduced to moderate negligence. And we saw that in your briefing. It's quite effective. And that is something that I assume is open to mine operators to argue to an ALJ. Well, they are. To say, hey, guys, you know, we think we actually didn't engage in these violations. But if we did, here's what we think. I mean, you could use that too, right? Right. But to finish my point is, had we started with the $20,000, if we had gone in, so the $69,600 did not exist. Yep. And we go into the judge and we get the same results. I promise you, I've done many of these cases, the judge never would have doubled the penalty to $43,000. He would have reduced the penalty. And the only question is by how much. Did you argue? Did you make that argument? Absolutely. So you went in and said, regular assessment, here's what, you know, we don't think we're liable at all. But if we are, this should be treated this way. You made that argument? We are, yes, Your Honor. So what we argued was, we argued, look, Your Honor, this special assessment is arbitrary. In fact, their first witness. I saw that, but I didn't see him say that. Well, here's why, here's why. So their first witness, they only put on one witness for the first, one inspector for the first violation. He comes in, he testifies about all the facts and the stuff, and they didn't even mention the penalties. He didn't even mention it. He didn't mention the special assessment, didn't mention why it should be enhanced enforcement. He just goes all through it. So it doesn't even come in the record. So we get up and cross-examine him. You recommended this for special assessment, right? I did. Do you know where the amount came from? And his answer was, I don't really care where it came from. I played no role in it. I don't know. So they never put in any other evidence on that particular one about where it came from, why merit-enhanced penalty. And so to the judge, we said, Judge, they failed to meet their burden of proving any enhancement. You should just disregard that $40,000 violation. You should just disregard that starting point and start with something lower. And the judge said, that's irrelevant. Can you account for this in a preponderance of the evidence standard? I'm having a little trouble understanding. There were a lot of facts here and what we're fighting about, facts and things like that, but the facts of what the penalty was, what the conduct was that the penalty, the ticket was written up for, and the facts about prior history of infractions, not statistically, not computing the statistics, I guess, more or less, but just the facts of those things. Do you dispute that those facts were proved by preponderance? Or I understand you'd be disputing that they hadn't shown by preponderance that this was a special case. Right. So what the judges do often, and what the judge did in this case was, he accepted evidence on the six statutory factors in Section 110I of the Mine Act, and that's like negligence, gravity, history of violations, all the things we're talking about. But there's a bunch of facts. And those facts came in, right. Were those proved by a preponderance of the evidence? What's that? Do you dispute that the facts were proved by preponderance of the evidence? Your focus is on these. Right. And so that is the fundamental question in this case. As to the facts. Well, as to the facts. Because all those factors involve a bunch of facts. Correct. Those facts on the ground. You don't dispute those were proven, or that you may not like the findings, but you don't dispute that the ALJ required those facts to be proven by a preponderance of the evidence. That's correct. But negligence itself isn't a fact. It's based upon facts. Right. No, I'm just trying to break things up. Yeah, yeah, so the facts came in, but the question is there were no facts about. Just to be clear, it's not that the facts came in. And so you don't dispute that the preponderance of evidence standard was applied to the facts. Well, I do. I would say that in this case I don't think they were applied to mine size or the ability to the operator to stay in business because those were never issues that were raised at the trial. They were kind of. But not disputed. They weren't really disputed. They weren't really disputed, but they weren't really. But the ALJ didn't say you don't have to prove that by a preponderance. No, that's correct. And so the facts did come in, and they resulted in the violations becoming even, like I said, the three went from moderate negligence to low negligence. But what you're disputing is the gate, is that they have to show something. Right. Why they opened the gate and conceptualized this, present this to the ALJ as a special assessment case rather than a regular assessment case. That's correct. And I guess the question, so are you challenging their regulation that sets up a special assessment versus a regular assessment regime? We're not challenging what MSHA has done. I mean, there's a great argument that their current special assessment program is just arbitrary, as pointed out by two of the commissioners in the split opinion, the second split opinion. But that's not what we're challenging. Our challenge is that, look, when we have an evidentiary hearing, they shouldn't just have to prove facts underlying the six statutory criteria. The APA says it on its face. But that's what the ALJ, I'm sorry, I interrupted you. That's okay. I was just going to say the APA on its face says that a sanction must be supported by considerable and substantial evidence. And the Supreme Court interpreted that to mean a burden of proof by a preponderance of the evidence, not just the underlying factors, but the sanction itself. Sanction is defined as the penalty. So is it the Secretary's penalty proposals that you are objecting to and think haven't been proven? They haven't been proven, right. So let me just say it really simply. Whatever the Secretary proposes as a penalty, he or she, whoever the Secretary at that time, should have to prove it at court if we contest it. It's that simple. Justify it with the facts. I mean, I think the ALJ accepted and didn't accept. The ALJ didn't use the Secretary's proposed amounts, but came up with a deal. You're framing it. You're saying, oh, well, he did, because you're framing it in terms of the regular assessment grid and you're framing it in terms of the special assessment grid. But those are the Secretary's language. And the ALJ is speaking ALJ language. That's true. And looking directly at the statute and saying here are six factors and here is what I'm going to do. In an adversary system. I do. I agree. But, again, I just tell you, Your Honor, that if the Secretary had never proposed $70,000 and they come in with a regular assessment of $20,000, there's zero chance, based on the judge's findings, that it would have increased the penalty to $43,200. Over 100% increase. That would not have happened. It would have been reduced. It would have been probably $10,000 to $12,000. And if you had come in and said not, oh, they haven't met their burden, but if you had come in and said regular assessment amounts are this, this, this, and this. We did do that. That's the most you should do. How is that any different from what the Secretary is doing? You're both in an adversary system saying this is the way we evaluate this under, as advocates, the rubrics that we think ought to apply. And then it's up to the ALJ. Well, that really is the question. What does the MINE Act require? What does the APA require about what the Secretary should have to prove in regard to Section 105B of the MINE Act? This is the section that the Commission often, it does refer to it, but it doesn't rely upon in its decisions about assessments. And that section says that following the hearing that the Commission shall affirm, modify, or vacate the proposed penalty. So the proposed penalty is relevant. It's the starting point by the statute. By the statute. And if the judge, and it's funny, I think what the Commission has done is they want to give their judges independence. And I understand and respect that. They do want the judges to be independent. But in their quest for independence. But it's not that they want the judges to be independent. It's the Congress. You're correct. You're correct. Congress wants the judges to be independent. Congress has given them the authority to assess.  authority to assess. And we have case law saying that the ALJ is supposed to look at this in de novo. It's a new hearing. That's correct. But the ALJ looks at negligence de novo. And how does a judge make a determination of negligence de novo? The judge doesn't get the recommendation on negligence from MSHA or the Secretary and just say, oop, that's conclusive. The judge hears evidence on negligence. And then the judge exercises his or her discretion and finds a negligence. Same thing. In fact, I come back to 105D. If the judges are truly independent, the commission is truly independent, then when would they ever need to affirm the proposed penalty? Why would the Mine Act even have that language in there? Because if it's independent, then 105D shouldn't even say affirm. It should just say the judge sets the penalty. But that's the statute. But that's my point. The statute says that the judges, the commission, shall affirm, modify, or vacate the proposed penalty. Which means the proposed penalty should come into evidence. The Secretary should have to prove whether it should be affirmed. And we should try to prove that it should be modified or vacated. That just sounds like it should be the starting point. Exactly. But you don't want it to be the starting point. Well, no. Actually, with the special assessment weeks, I've gone way over my time. And if I can, I can answer this. Actually, that time only works for us. We get to decide. So you're fine. As long as we keep asking questions, you're right ahead. I had a trial, an evidentiary hearing, after this hearing and before the first commission decision that I think actually worked exactly like it should. What happened was we had moved to compel the form that the inspector uses to start a special assessment. And the judge actually said it was Judge Manning, and he said, denied. He said, however, I understand their arguments about the special assessment, and I'm going to require the Secretary to bear the burden of proving the propriety of the special assessment. So we go to the hearing, and the Secretary, instead of like this case where the inspector came in and didn't know anything about the assessment, in this case, the Secretary brought in two witnesses. The first witness was the inspector, and he said, yes, I recommend it for special assessment. Here's why I did it. They did this on direct examination. I got to cross-examine him on that. And then they bring in another witness, the assistant district manager, who talks about the number, where the number came from, what it was based on, why they enhanced it. And the judge heard all of that evidence. And then we were able to cross-examine him on the basis. Well, where did this number come from? What are these points? How did you add them? And the judge took that into account. And the judge didn't have to accept it, but that's just called the process. They put on the evidence to show it. We get to rebut it. They can try to rehabilitate it. That's the way it should go. It's not the mine operator's burden to start that. Could you have called the assistant regional manager or whatever in this case and said, where did that number come from? It's not my burden to do that. I'm not asking that question. I don't know how the process works. Could you have called and gotten that same information? I would have had to have subpoenaed the witness. I could have tried to get them here. But, again, the point is that who bears the burden of proof? And if the secretary comes in and something that would have been regularly assessed at $500, and they go, in that case, actually, it was $1,000, and they had proposed a $52,500 penalty, it was, like, massively inflated. And the question is why. They should have to say to the judge, because it is the starting point per the statute, and because it's the starting point, they should have to say where it came from. What's it based on? And if they can't prove it up, then the judge should disregard it, like any evidence. Just to be – and I haven't thought this through with the record in front of me, but one reason why a number is chosen in what's – less concretely guided and sort of evidentially bound inquiry when we're looking at a penalty, one of the big factors is how big is the operator? And, therefore, what kind of, you know, bite is going to be a bite that's felt? And another factor is how intransigent has this operator been on this kind of thing? And, granted, those are not, you know, chapter and verse going to give you a dollar amount, but those – it seems to me when you're talking about was there any burden met in support of a penalty amount, I would say that would be the prima facie case, and that, yes, it would meet a burden. And then that's when it comes in on the operator to say, wait a minute, I'm not satisfied by that, and push back with evidence. So it's not putting a burden on you to say, you know, they've come forward with a basic idea, and in their experience a recommendation. See, we don't even know, Your Honor, where – and I don't disagree with you. I completely agree with you on mine size or violation history. But on the penalty amount, I disagree because MSHA – But mine size – those go to penalty amounts, what I'm saying. Well, yeah, but they don't – but the problem is they're not saying how. That's a great highlight of this case is that if you actually look at what the judge did, there's – you know, MSHA, under the Secretary, under the Secretary's regulations, already assigned a maximum for mine size in proposing their penalties. And it had no – and it was no different than the regular assessment mechanism. The regular assessment and the special assessment mechanism used by the Secretary in this case would have given the same result for mine size. So that's – and that's the ALJ – I'm sorry, Commissioners Young and Alton talk about that in their split opinion. That it really has – you know, if the Secretary – if the Commissioner's judge said, I'm going to inflate the assessment because of the mine size, the question is, well, why? Why is it so much worse than what the Secretary did? Again, and how do you do it? And again, I want to ask you for – Okay, unless my colleagues have further questions, we'll give you time back. Okay, thank you. We'll hear from the Department of Labor now. Thank you very much. Good morning, Your Honors. Cheryl Blair-Kievsky for the Secretary of Labor. Your Honors, there are some types of violations that are of such a nature or seriousness that it's not possible to determine an appropriate penalty under the regular assessments. This is such a case. And in that instance, we allege that the ALJ had gone through repeated efforts to do exactly what was required of him, and yet the outcome has been a series of demands for yet another bite of the apple. This request, Your Honors, I submit should be denied. The only issue before this Court today is whether this ALJ, his de novo penalty assessments constitute an abuse of discretion. And the answer has to be a resounding no. Nothing in the regulations or the law or case precedent requires that this judge produce a line-by-line accounting of the de novo penalties he assessed. Yet it appears that nothing but that will satisfy this operator. And after two unsuccessful attempts in doing so, he's trying yet one more time. The judge's obligation here is clear. He was obligated to utilize the six statutory penalty criteria in his determination of the facts. And this he did twice. If Mr. Hardin paints a picture of a practice in the hearings, if I'm understanding him correctly, that suggests that there's a lot of confusion about the correct way to put on an evidentiary hearing here, will you respond to his? Your Honor, I submit that there's no confusion. Unlike the regular assessment, which there are a whole series of tables and metrics that they use, the special assessment is a tool that the Mine Safety and Health Administration has for special cases. And it's named that way for... the regular assessment and special assessment. Does she have – do they frame her analysis or thinking in any way? No, Your Honor. The – what happens at the MSHA level is a proposal. That special assessment is a proposal that the Secretary must prove, like any other allegation, by a preponderance of the evidence. And in regards of whether she chooses the regular assessment or the special assessment, it's simply an allegation, a proposal. And once the Secretary makes that proposal and it's finalized and that package is mailed off to an operator, everything that the Secretary does after that is irrelevant, because it starts anew. The jurisdiction shifts, and the ALJ and the commission start anew. And so in this case, as we found out, the ALJ... And what role do the various standards under regular assessment or special assessment, what roles do they play in the determination by the ALJ and the commission? Are they looking at them? Are they analyzing them? Yes, they are, Your Honor. And it's – the ALJ looks at these – excuse me – these rules brand new. It's an independent determination. You're saying the ALJ is using the regular assessment, special assessment, to come up with her determination? That's her determination. It's not ours. Ours is just a proposal that could be changed. But in your understanding, they have these same grids before them, and they refer to them in deciding amounts? You mean the ALJs? Yes. Yes, Your Honor. And so there's the guidance for special assessment, and here the ALJ was above even that. The ALJs... In the guidance document for special assessment. Because the ALJ uses these same six penalty assessments, but of course, because that's an independent determination, they have different weights. The ALJ is free to, for example, the ALJ in this case, put great weight on the fact that this was a large mine. And the ALJ is entitled to do that, to determine... I guess my question is, why would the ALJ use the... Why would they have the charts? Why would she have the charts in front of her for regular assessment and special assessment if what she's only looking at are the statutory guidelines? Why isn't that all pushed to one side and say, okay, let's talk about the statute and see what was meant here? Your Honor, I would imagine because the ALJ's determination is de novo. She's literally starting from scratch. If matter is not... Is it your understanding that she has to look at the regular assessment or the special assessment, or is it your understanding that that's something she can consider as she goes about weighing the statutory factors? Just help me understand. The latter, Your Honor. Okay. And because... So it wouldn't be an abuse of her discretion to not even look at the regular assessment, the special assessment, and to say, I've got the statute here. Let's go through each of these factors. That would not be... If she chose to conduct the hearing that way, that wouldn't be... I would imagine she would. It wouldn't be that way because she has to, unlike the Secretary, the ALJ has to attach her reasons. The ALJ has to explain those criteria. She has to say, this is why I give... But does she need to do that in terms of the regular assessment or special assessment, or can she just do it by reference to the statute alone? I imagine she would do it with the regular assessments, too, but, Your Honor, that's not our case. No, I'm just trying to understand the process here. All right. We're trying to understand the role of the grid. I mean, it surprises me to hear you say that the ALJs may and do use these point grids because I thought the case was that they are... That's really internal to the... It is internal, but there's these guidelines. And the gentlemen at the Office of Assessment refer to this, to me at least, as their Bible. They look at these, and it's attached. It's in the record. And they... So what they... Your Honor, when you say the Bible, are you saying for the... For their purposes. For their purposes. People who set the penalty, not the ALJs. The people who set the penalty. No, not the ALJs. The people who set the penalties because the determinations are made in the regions where the mines are. And then it's sent, a group of people, four people look at this, and then a special assessment is sent here in Washington to the headquarters, and then the penalties are attached. So opposing counsel was right when he said, asking, cross-examining the inspector about the assessment. An inspector in the region wouldn't know what that is. He is the one who goes to the mine and sees what happens. In this case, for example, the safeguard violation, for example, he went to the mine every once a month, let's say, and every time he went, the same citation was there. So these are the people, the boots on the ground, who are seeing the same thing happening over and over and over again. And based on that, among other things, of course, they determine that this is a case that should be specially assessed. So when you say the facts that the inspector on the ground puts together are sent and it's looked at by a group of four people, where are they? No, they're at MSHA's headquarters here in Washington, D.C. So that's whether it's regular or special, it comes to Washington? It comes to Washington, D.C. And the four people who are in the region, it's the inspector, his supervisor, an assistant district manager, and a district manager. So this is not quite as arbitrary as we would be led to believe. And those are the ones who put together this package that would say this should be specially assessed. And that's sent to Washington. And that determination is made. But this case, it deals with whether this particular ALJ did as he was tasked with. And that's where we are. This ‑‑ Can you explain to me, one thing I found rather confusing is the first time I went up to the commission, there was all this argument about did they start with, did this ALJ start with the secretary's number and special assessment or not? And so that was the whole point of the remand. And the commission goes out of its way to sort of say, oh, don't start with it, don't start with it. But then they're crystal clear that if you depart too far from it, you've got to explain your departure. I just don't even understand what the commission thinks the role is supposed to be. You're affirming or modifying that proposal. So that seems to me they're right, that at some level it's the center of decision. So why not say start there? And if you're going to say it's completely de novo, ignore it altogether, then why do you say explain your departure from it? It's a very weird dichotomy. Exactly, Your Honor. It seems ‑‑ Well, exactly, it's yours. But it's confusing, and I understand your confusion. Because it seems as though something happened between that first commission decision and the second commission decision. Because all that happened, there was the evidentiary hearing, of course, it came to the commission, and they remanded with two specific instructions. They told this ALJ, these are the two things we would like to see you do. And he did. He said, I did not look at the specially assessed penalties that the secretary had proposed. And they wanted him to also talk about the safeguard violation. And he did exactly that. And when it came back to them the second time, because it was appealed up again, it seemed like it was a different case. Can I ask you, do you have a position on whether the commission was correct in its first remand? I mean, I also found puzzling what Judge Millett found puzzling, which is this anxiety that somehow referring to what the secretary has asked for, is an indicium of not being independent. I mean, we refer all the time to arguments that one counsel or another proposes. It's part of the framework for thinking about a matter in dispute. Do you have a position on whether the commission needed to remand that first time? Well, we would have preferred if they didn't. But it's understandable why they did. They wanted to have some more explanation from this ALJ. They wanted more explanation on specifically this issue of is this your starting point? Is it the secretary's position that the secretary's penalty proposal should be the starting point? It's de novo review, but let's start with that number, and then you go down or up. Is that the secretary's position? Well, Your Honor, that's the secretary's position. That's what the secretary does. But the ALJ doesn't have to remember this is just a proposal. I get that. We see this all the time. You know, a police officer will give you a ticket and say either pay it or show up in court. And you show up in court, and it's the executive branch's proposal as to what your sentence should be, but the judge acts completely de novo. But in that context, the judge doesn't have any duty to explain a departure from what the police officer recommended. The judge makes an independent decision. Here you've got the weird dichotomy that says start like you've never even seen it. Pretend it doesn't even exist, the secretary's proposal. But at the end, justify it in reference to the secretary's proposal. And that's very weird. It is. It is weird, Your Honor. Regrettably, I must argue. Or maybe they're right. I guess the justification with reference to if there's a substantial departure. But the statute itself could just be, you know, issue an order with a penalty that's the same or different from the proposed penalty. I mean, in a way, affirming modifying or vacating the secretary's proposed penalty makes it seem like that's the focus. But you could also just be like do an order that's either the same or different. And that maybe sounds more independent. Yeah, it is independent. And what's critical, Your Honors, is the fact that the only probative evidence in this case on that subject about this judge's independent determination is the judge's assertion itself. And it's mind boggling that as judge, the two affirming commissioners noted, it's surprising that that judge's decision was treated so cavalierly. It's like for want of a better phrase, if I may, he gets thrown onto the bus. And I don't understand why they did that. I think the concern here seems to be, look, when the secretary comes in and says this is a special assessment case, and they're arguing that, even when you have de novo review, it's got consequence. It sort of sets the tone and the tenor. And at a minimum, the ALJ knows that, all right, this is, the secretary thinks this is a serious, unusually serious case. And if it was, I just need to make sure my question is. So there's an impact on the, at least the ethos of the hearing, and well, maybe sort of the way one starts grappling with what the penalty should be. And if a mine operator thought, how the secretary picks the cases to call for a special assessment, as opposed to a regular assessment, is utterly arbitrary. It is irrational. There is no rhyme or reason. Or worse, there's a bad reason, right? If you're a mine operator who didn't contribute to somebody's campaign, you're going to get special assessments every time. And if your mine operator did contribute, you'll never get a special assessment. Let's say that's, I'm not suggesting at all, or remotely this is going on, it's a totally hypothetical case. But if that were going on, and we all know that when you walk into the hearing room and say this is a special assessment case, this is a bad actor, it at least has some effect on how the ALJ starts the process. Or approaches the case. How would the mine operator ever challenge the arbitrariness or unlawfulness of the secretary's approach? I don't think it's that arbitrary or unlawful. I know you don't agree with this, but it's a hypothetical question. And to be clear, it is a hypothetical question. I'm not remotely suggesting that happens. But if, but they certainly think it's unpredictable and arbitrary, not for the reasons I gave. But they think it's unpredictable and arbitrary as to when you do a special assessment or not. So when and how would the mine operator, or never, would they be able to challenge the secretary's erratic invocation of special assessments? Or is it you mean they can never be challenged? It could be challenged. Because when it gets to hearing, the operator will say, I don't agree. They're going to say I don't agree with this assessment. What they want to say is, what are we even doing in special assessment land? You're always coming after me with special assessments. You never go against these other mines with special assessments. I have no idea on what possible fair and rational basis you're making these distinctions. Across the board. Because you're a mine operator that has 109 violations. You're a mine operator that has violations under the serious rules to live by violations, citations. You're a mine operator who every time an inspector goes to your mine, there's something wrong. And these are not a broom or is in a pathway. These are serious violations that could result in fatalities. But Ms. Blair-Kaczewski, the mine operator has said, actually, no. For similar kinds of violations, the rates should be lower. And we're not such a bad actor, given the volume of coal we produce. Our rates of these kinds of violations are actually lower than rates for other operators. So they're making a case about contextualizing this and saying it actually isn't supported by the factors that the ALJ relied on. As a way of pinpointing, in their view, what really was going on was this. I mean, they don't put it in this terms, but the dissenting commissioners put it in the terms of anchoring according to just what was sought by the secretary. That is so powerful that it creates this kind of distortion for everybody. But your Honor, anchoring, I'm sure, in the scientific world is a real solid determination. But in this case, it's irrelevant. And it's irrelevant because of one thing. This particular ALJ on this day in this case said he didn't do it. And I buy that. And it's, if you don't or if the commission didn't, it's, they're saying that their ALJ is lying. I don't understand. You have to believe that this ALJ is doing what he said he did. What they say is that, look, we're more than 100% over what we would get with an ordinary assessment. It's more than double that. And that's just a fact. The number is just a fact. And if we started an ordinary assessment land, you would never, there's never been, I guess I would say, a case where the ordinary assessments get up to 40-something thousand. And so whether the poor ALJ realizes it or not, his mind has been warped by the secretary's special assessment. And that's what was said. But, Your Honor, I don't buy that. Special assessments is this specialized tool. And it's not used arbitrarily. It's used .925 of 1% of the time. Yes, but how do we know it's not arbitrary in that .925% of the time? Because the ALJ is looking at the same facts, Your Honor, that the secretary looks at. They are looking at the same facts at this mine. Five of the cases in this case, when it started out, this particular case started out with ten citations. Five of them were settled because from the record, it seems like they were. I think you're answering a different question. Okay. I'm sorry, Your Honor. I think that's fine. Okay. Thank you very much. Thank you, Your Honor. We'll hear back from Mr. Hardy. I'll give you a couple minutes, Mr. Hardy. I just have a couple quick points. I'd like to start almost where you left off, and that is how would a mine operator ever challenge an inarguably arbitrary special assessment? So for whatever reason, the secretary proposes an arbitrary special assessment. What's an operator to do? We submit that the proper procedure is if we contest it, if a mine operator contests it, the secretary shows the number to the judge at the hearing and then proves and sets out to show why the enhancement was given. What's to stop you from doing all the challenging you want in that individual hearing going, can you believe this number? There's no basis for this number. Well, it's not just the number, though. It's what's the rationale, where did it come from, and why did you enhance it five times? And they get a chance, then they can defend it, and the mine operator gets a chance to rebut it, and then it will reveal. I submit that the process. But you get to defend, and part of your defense, people do this as a defense all the time, is utterly irrational for you to have done that. You have no factual basis for it. Here's my evidence. And I think the problem is that when the judges feel like they are free from the shackles of a burden of proof, when they are free to just come. Burden of proof in what? You said they agreed that all the facts have to be proved by preponderance. Well, I mean, I'm saying in our situation, right, that's what it should be. They should have approved it. But what, in effect, is actually occurring is that the judges don't feel the pressure of, oh, they have to meet the burden of proof on the number or the special assessment. And therefore, they're like, eh, they don't even require it to come in. That's right, but you're going to fight about the facts. Well. The facts don't justify it. And the facts, right. And I think that's a great point, because the facts here, what did it show here? The secretary put on witnesses, in particular one witness who said he based his proposal for a special assessment on the mine's history of violations. And then the documents that the secretary had provided the mine operator showed that the special enhancement was given for gravity and negligence. The special enhancement was not even based on history of violations. So what the inspector said and what the document that showed where MSHA came up with the number were completely inconsistent. And if we start with an arbitrary assessment, any reduction to or from by a judge to an arbitrary assessment is arbitrary in itself, is what I submit. The secretary should have to come in and prove any special assessment or enhancement that it's submitting. And the last thing I'd say is I think there is confusion. And that's why we're here. The first decision was a 3-2 by the commission. The second decision was a 2-2 by the commission. The judges that I've dealt with, they're really good people and they're looking for a good answer. And they don't want to create an arbitrary penalty. They want to do the right thing. And that's why they refer to Section 100.3. They do refer to the regular assessment mechanism often when setting their penalties, because it's an objective guidelines that went through notice and comment rulemaking. And they think it's fair. And so that's why it comes in and they do look at it. But can the special assessment provision be used to go down also as well as to go up? I've never seen that happen, but I think it probably could be. I think it could be. If there was something that would have had a high regular assessment, it could be. And it's possible they might do that for a small mine operator in a case, but I've never seen it personally. I thought there was something in the record about that. I should have asked Usha. I'm not sure about that. So I think this Court can correct the confusion by simply saying that the Secretary bears the burden of proving any special assessment that it proposes. Any other questions? Yeah. If you have something to say to whether the special assessment can also be used to vary downward, that would be helpful. Come up just so the microphone will pick you up. Sure, Your Honor. When the special assessment package comes from the region and is brought to the assessments office here in town, the gentlemen and ladies in the special assessment office have the ability to raise that figure or lower it plus or minus 25%. Okay. Thank you. You're welcome. Thank you very much. The case is submitted.
judges: Griffith, Millett, Pillard